IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DELVA NEWHOUSE, as
Administratrix of the Estate of
William Perry Newhouse III,

      Plaintiff,

v.                                                Case No. 2:17-cv-02735

ETHICON, INC. *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is proceeding on a Complaint [ECF No. 2], filed on May 5, 2017, by Plaintiff, Delva Newhouse ("Ms. Newhouse"), as Administratrix for the Estate of William Perry Newhouse, III ("Mr. Newhouse"), her son, who died in Charleston, West Virginia, on November 16, 2018. Pending before the court are: (1) Defendants' Motion for Summary Judgment [ECF No. 125]; (2) Defendants' Motion for Expedited Hearing [ECF No. 130]; (3) Plaintiff's Motion for Objection and to Strike the Motion for Summary Judgment and Demand for Sanctions [ECF No. 132]; (4) Defendants' Motion to Strike Plaintiff's Affidavit [ECF No. 134]; (5) Defendants' Motion to Renew Motion to Dismiss, or alternative Motion to Compel [ECF No. 135], and (6) Plaintiff's Motion for Objection and to Show Cause for Prosecution [ECF No. 136]. For the reasons stated herein, Defendants' Motion for Summary Judgment [ECF No. 125]

and Motion to Strike Plaintiff's Affidavit [ECF No. 134] are **GRANTED**, all other motions are **DENIED AS MOOT**, and this civil action is **DISMISSED with prejudice**.

I. Allegations in Complaint

On May 5, 2017, Plaintiff filed the instant Complaint [ECF No. 2] against Ethicon, Inc., Ethicon Endo-Surgery, Inc., and Johnson & Johnson, Inc. (hereinafter "Defendants") contending that Mr. Newhouse was implanted with "VICRYL Physiomesh Flexible Composite Mesh and VICRYL SUTURES during a[n] abdominal surgery for a hernia in 2007[,] following a 1995 gunshot wound to [his] abdomen." [ECF No. 2, ¶ 8]. The Complaint further alleges that, in 1995, Ethicon sold 3.6 million Vicryl dissolving sutures that were contaminated with infectious bacteria "during processing in a breakdown-prone sterilizer unit." [ECF No. 2, ¶ 9].

The Complaint contends that "ETHICON, a subsidiary of JOHNSON & JOHNSON, INC[.,] manufactured, marketed, sold and distributed VICRYL Physiomesh Flexible Composite Mesh that was defective, unreasonably dangerous, and the company did not provide doctors and patients with 'reasonably sufficient technical information' about the risks of its product." [*Id.*, ¶ 10]. The Complaint further contends that Mr. Newhouse "suffered many complications from post surgery from the Defendant(s) ETHICON et al VICRYL Physiomesh Flexible Composite Mesh and VICRYL SUTURES that continues to date, including severe chronic persistent post-operative fistula, chronic [pancreatitis] with recurrent stones, hernia of the abdominal cavity, abdominal abscesses, chronic abdominal pain and excessive unexplained weight loss." [*Id.*, ¶ 11]. The Complaint further alleges that "Local

General Surgeon Expert Witnesses have declined to operate on [Mr. Newhouse] for fistula and hernia repairs because of the Defendants['] negligence, breach of express warranty, breach of implied warranty by the Defendant(s) ETHICON Vicryl Mesh and/or Vicryl Surgical Sutures that presented [an] unreasonable and probable risk of illness and injury." [*Id.*, ¶13].

Thus, the Complaint is construed to allege claims grounded in: (1) failure to warn; (2) negligence; (3) breach of implied warranty; and (4) breach of express warranty. Mr. Newhouse died on November 16, 2018, and Ms. Newhouse (hereinafter "Plaintiff"), as the administratrix of his estate, was substituted as the plaintiff herein.

## II. Background

On October 16, 2007, Mr. Newhouse had surgery at the University of Virginia Medical Center ("UVA"). [ECF No. 2-2, Ex. B] ("2007 surgical report"). Mr. Newhouse presented with a "dinner plate sized abdominal wall incisional hernia." [*Id.*] The pre-operative diagnosis was "large ventral hernia previously repaired with Vicryl mesh and split-thickness autograft." [*Id.*][1] The 2007 surgical report does not indicate that any synthetic mesh was used during that surgery; however, a biological mesh graft, using a product called SurgiMend,[2] was completed, and 3-0 Vicryl deep dermal sutures were used. [*Id.* at 5].

---

[1] Mr. Newhouse previously had extensive abdominal surgeries in 1995 and 1996. Subsequent medical records indicate that skin grafts and Vicryl mesh may have been used in those earlier procedures. [ECF No. 2-2, Ex. B; ECF No.125, Ex. B at 100-102; Ex. C].

[2] According to Defendants' motion documents, SurgiMend is a biological mesh product derived from "fetal and neonatal bovine dermis," which is manufactured by TEI Biosciences, a subsidiary of Integra LifeSciences Corporation. [ECF No. 125, Ex. D, at 2; ECF No. 126 at 4 n.3].

3

The following undisputed facts were derived from Ms. Newhouse's deposition testimony [ECF No. 125, Ex. B]:

- Mr. Newhouse's health problems, which Ms. Newhouse attributes to the mesh and sutures, began by early 2009, when he developed frequent and recurring abscesses of the abdomen, leading to the formation of a fistula. [*Id.* at 118-120, 142-143, 152-153].

- In 2009, the Newhouses began receiving telephone and mail solicitations from attorneys involved in hernia mesh litigation. However, they declined to pursue litigation at that time. [*Id.* at 27-32, 38-42].

- Between 2009 and 2011, doctors told the Newhouses that the abscesses were caused by a reaction to an infected Vicryl suture, but that mesh infection was a possible contributing factor. Ms. Newhouse further stated that, during that time, treatment of the infections with antibiotics became less effective. [*Id.* at 118, 145-150].

- During a doctor's visit in Charleston, West Virginia, on October 13, 2011, it was recommended that Mr. Newhouse return to UVA to explore further treatment for suspected "complex mesh infection." [*Id.* at 146-148; ECF No. 125, Ex. F]. Ms. Newhouse testified that, as of that date, she and Mr. Newhouse knew that the mesh was possibly infected and, absent removal thereof, his abdominal infection could recur and worsen. [ECF No. 125, Ex. B at 149-153, 172, 176-177].

- Due to her son's recurrent infections and the solicitations from attorneys concerning the mesh litigation, Ms. Newhouse conducted her own research concerning complications from hernia mesh placement. Thus, Ms. Newhouse confirmed that, by 2012, her research led her to discuss with Mr. Newhouse's doctors her belief that mesh could be causing his complications. [*Id.* at 43-44, 46-47, 152-153, 169-172].

### III. Defendants' Motion for Summary Judgment

On December 6, 2019, the defendants filed a Motion for Summary Judgment [ECF No. 125] and accompanying Memorandum of Law [ECF No. 126], asserting that Plaintiff's claims are time-barred under Virginia's two-year statute of limitations. The motion further contends that Plaintiff's claims fail as a matter of law because

4

she has not properly offered any expert testimony establishing that Defendants' mesh or suture products were implanted in Mr. Newhouse in 2007, or that his alleged injuries were caused by a defect in any of Defendants' mesh or suture products.

On January 3, 2020, Plaintiff filed a Motion for Objection and to Strike Defendants' Motion for Summary Judgment and Demand for Sanctions [ECF No. 132] (hereinafter "Response"). Plaintiff's Response and her accompanying affidavit [ECF No. 132-2] attempt to overcome Defendants' statute of limitations argument by contradicting her deposition testimony that Mr. Newhouse was experiencing complications following his 2007 surgery as early as 2009. Instead, Plaintiff now contends, for the first time, that Mr. Newhouse began experiencing complications from the 2007 surgery in 2016. [*Id.* at 1].

On January 13, 2020, Defendants filed a Reply [ECF No. 133], reiterating that Mr. Newhouse's medical records and Plaintiff's deposition testimony clearly establish that Plaintiff's claims accrued, and the statute of limitations began to run, no later than 2012. Defendants' Reply states that Plaintiff's Response does not dispute the applicability of Virginia's two-year statute of limitations, or Defendants' assertion that it begins to run when an injury develops.

Defendants further contend that Plaintiff's affidavit is a sham affidavit that contradicts prior sworn testimony and evidence of record. [ECF No. 133 at 3]. Thus, Defendants request that this court disregard Plaintiff's affidavit and have moved to strike the same. [ECF No. 133 at 3-4; ECF No. 134]. Defendants also filed a Motion to Renew their prior Motion to Dismiss or alternative Motion to Compel [ECF No.

5

135], asserting that Plaintiff failed to timely comply with the undersigned's Order to produce medical records.

On February 6, 2020, Plaintiff filed a Motion for Objection and to Show Cause for Prosecution [ECF No. 136] requesting that the court deny Defendants' motions. Attached to Plaintiff's motion is another affidavit [ECF No. 136-1] ("second affidavit") and other exhibits. In pertinent part, the second affidavit revises Plaintiff's prior affidavit to include a statement that Mr. Newhouse "was not suffering any serious complications from Defendants ETHICON well-known defective VICRYL polypropylene hernia mesh and suture products until <u>2016</u>." [*Id.* at 1, ¶ 1].

## IV. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after

6

adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

V. Discussion

   A. *Sham affidavits*

It is well-settled that "a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." *Moore v. Mountain State Health Alliance*, [No. 2:16-cv-00014,] 2018 WL 1309739, at *3 (W.D. Va. Mar. 12, 2018) (quoting *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999)). Thus, "'[a]t the summary judgment stage, if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule.'" *Moore*, 2018 WL 1309379, at *3 (quoting *Kinser v. United Methodist Agency for the Retarded-W.N.C., Inc.*, 613 F. Appx. 209, 210 (4th Cir. 2015) (unpublished)).

I **FIND** that both of Plaintiff's affidavits [ECF Nos. 132-2 and 136-1] are sham affidavits that contradict her prior sworn testimony, and I will disregard and strike the same. Accordingly, it is hereby **ORDERED** that Defendants' Motion to Strike

7

Affidavit [ECF No. 134] is **GRANTED,** and the affidavits contained in ECF Nos. 132-2 and 136-1 are **STRICKEN** from the record.

### B. *Statute of limitations*

In a tort action, West Virginia follows the traditional rule that the applicable substantive law is determined by the place of injury. *Chemtall Inc. v. Madden*, 607 S.E.2d 772, 779–80 (W. Va. 2004) (citation omitted); *see also Woodcock v. Mylan, Inc.*, 661 F. Supp.2d 602, 605 (S.D. W. Va. 2009) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Although Mr. Newhouse resided in and died in West Virginia, his cause of action arose in Virginia, where he had the subject surgeries and suffered his alleged injuries. Thus, the substantive law of Virginia governs Plaintiff's claims.

Under Virginia law, personal injury suits must be filed "within two years after the cause of action accrues," regardless of the theory of recovery. Va. Code § 8.01-243(A); *see also id.* § 8.01-246 (providing that § 8.01-243 governs limitation period for warranty actions based on products liability). Virginia Code § 8.01-230 clarifies that a cause of action "shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained . . . and not when the resulting

damage is discovered."[3] Thus, as aptly noted by Defendants, under the law applicable at the time, "in a personal injury action . . . it does not matter when a plaintiff discovered—or reasonably could have discovered—that she was injured, or when she could have discovered that her injury was caused by the defendant's product. Rather, the only question is when the injury occurred." *Torkie-Tork v. Wyeth*, 739 F. Supp.2d 887, 891 (E.D. Va. 2010).

Plaintiff filed the instant Complaint on May 5, 2017. However, in her deposition, Plaintiff acknowledged that Mr. Newhouse's complications had developed by 2009, when he began to experience recurrent abscesses of the abdomen and developed a fistula. [ECF No. 125, Ex. B at 118-120, 142-143, 152-153]. Even taking the undisputed evidence in the light most favorable to Plaintiff, Plaintiff was certainly aware of the alleged causes of Mr. Newhouse's injuries by 2012. Thus, the Complaint herein is untimely under Virginia's two-year statute of limitations. Accordingly, I **FIND** that there is no genuine issue of material fact that Plaintiff's Complaint is time-barred, and, thus, Defendants are entitled to judgment as a matter

---

[3] In 2016, Virginia Code § 8.01-249 was amended to provide that medical device product liability actions do not accrue until the plaintiff "knew or should have known of the injury and its causal connection to the device." Va. Code § 8.01-249(9). However, Plaintiff's claims were time-barred before this amendment and, as a matter of due process, cannot be revived by this amendment. *See Parris v. Appalachian Power Co.*, 343 S.E.2d 455, 461 (Va. Ct. App. 1986) ("[O]nce the limitations period has run, any subsequent amendments to that period generally would have no effect on the parties' procedural rights."); *Lewis v. Gupta*, 54 F. Supp. 2d 611, 617 (E.D. Va. 1999) (refusing to retroactively apply tolling statute that went into effect after statute of limitations had expired); s*ee also Starnes v. Cayouette*, 419 S.E.2d 669, 672 (Va. 1992) (due process protections do not allow retroactive application of amended statute of limitations of previously barred claim).

of law on this basis.[4]  Therefore, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [ECF No. 125] is **GRANTED**.

VI. Other pending motions

In light of the rulings made herein, Defendants' Motion for Expedited Hearing [ECF No. 130], Plaintiff's Motion for Objection and to Strike Defendants' Motion for Summary Judgment and for Sanctions [ECF No. 132], Defendants' Motion to Renew Motion to Dismiss, or alternative Motion to Compel [ECF No. 135], and Plaintiff's Motion for Objection and to Show Cause for Prosecution [ECF No. 136] are **DENIED AS MOOT**.

The Clerk is directed to transmit this Order to counsel of record and any unrepresented party.

ENTER: February 7, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[4] In light of this finding, it is unnecessary to reach Plaintiff's allegations that Defendants' products were used or Defendants' other grounds for summary judgment concerning causation.